IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KASEY FOX, et al.**                                                                                       **PLAINTIFFS**

vs.                                                    No. 4:19-cv-37-KGB

**TTEC SERVICES CORP.**                                                                            **DEFENDANT**

## DECLARATION OF ATTORNEY JOSH SANFORD

I, Josh Sanford, do hereby swear, affirm, and attest as follows, based upon my personal knowledge of the matters contained herein:

1. My name is Josh Sanford, and I am over the age of eighteen (18) and duly qualified to execute this declaration.

2. I am a resident and domiciliary of the State of Arkansas.

3. I am an attorney licensed in courts in the states of Arkansas, Colorado, Michigan and Texas; I manage the Sanford Law Firm, PLLC.

4. I have litigated and/or am currently litigating many other collective actions under the Fair Labor Standards Act ("FLSA") in the Courts of the Western and Eastern Districts of Arkansas, as well as in the Eastern, Southern, Northern and Western Districts of Texas, and the District of Colorado.

5. In these cases, it has been my experience that mail delivery problems not only exist, but they are in fact pervasive. In some cases, the mail problems have prevented some members of a putative class from joining the lawsuit when they later expressed their desire to join the case—but it was too late to participate.

6. An untold number of *Notices* sent by our firm are lost in the mail or returned undeliverable, even when the address provided by the defendant is correct. Sometimes the returned envelope is not returned to us for more than 150 days from its first mailing to the class member.

7. Additionally, some *Consents* signed and mailed by members of the putative class are lost in the mail. I know this because in my other FLSA collective actions, some potential opt-in plaintiffs have called to follow up on our receipt of their *Consents*, only to discover that we never received them. Clearly, however, most people do not call to follow up after mailing their signed *Consents*, assuming that by putting their *Consents* in the mail, we will receive the *Consents* and join them in the lawsuit.

8. On May 15 and 23, 2013, class members in one of our firm's other collective action lawsuits called our office because they had not received their *Notices* and *Consents*, which were mailed to them more than two months earlier. The addresses on file for these potential plaintiffs were correct, so their *Notices* and *Consents* were lost in the mail, and they only found out about the lawsuit from friends who had themselves received notice.

9. In another instance in April of 2013, a would-be opt-in plaintiff in another case called our offices to find out how the case was going, and at that time we discovered that we never received the *Consent to Join* that he had sent us about four weeks earlier.

10. In March of 2014, we received a returned envelope that contained a *Notice* and *Consent* in a collective action case; we mailed out the envelope in March of **2013**.

11. In May of 2015, we mailed *Notice* and *Consent* documents to a class in a collective action case in the Western District of Arkansas. We received several telephone calls from recipients of the postcards who requested the *Notice* and *Consent* documents because the original mailing did not reach them.

12. On July 17, 2014, we sent out *Notice* to a class in the Western District of Arkansas. Then **415 days** later—on September 5, 2015, two of the notices were returned to our office as undeliverable. Amazingly, on January 2, 2016, a full **535 days** later, yet another undelivered *Notice* envelope was returned.

13. On April 21, 2017, an undelivered *Notice* was returned to our office **1,010 days** after it was originally sent, on July 16, 2014.

14. On October 4, 2018, our office received a returned settlement notice and settlement check that had been postmarked on July 24, 2017, a delay of **437 days.**

15. It is unknown how many total people who have wanted to join our firm's collective actions have failed to as a result of these problems. And if collective action is conditionally certified in this case, it is unknown how many potential members of the putative class will suffer the same fate. However, even one member failing to join the lawsuit through no fault of his or her own, but merely because the signed *Consent* gets lost in the mail, is too many.

16. Allowing Plaintiff's counsel to send a follow-up reminder to any class members who have not responded to our offices within thirty (30) days after the mailing of the initial *Notice* would provide a fair and equitable solution to ensure that more members of the proposed class who want to join the lawsuit are able to. Moreover, this would not cause any prejudice to Defendants.

17. In many of our class cases under the FLSA email is a much more effective and timely method to communicate with parties. It is my experience in representing plaintiffs over the past six years that email is a more reliable and efficient way to deliver written communication to putative class members than using traditional U.S. Mail.

18. One of the features that email provides as opposed to traditional mail is faster feedback if an incorrect address is used.  That (generally) immediate feedback that an email is undeliverable is useful information to have when the intended recipient has a defined period of time within which he must respond.

19. Similarly, text messages are far more efficient and reliable than the U.S. Mail and also provides immediate feedback when text messages are undelivered.

20. So-called 'smart phone' usage is now almost universal among the 5,000 or so wage lawsuit plaintiffs that our law firm has represented in the past few years.

21. Plaintiffs in our wage lawsuits are responsive to communication via text message; for many of our clients, it is the preferred method of communication.

22. Marketing research shows that 90% of text messages are read within three minutes of receipt. https://www.tatango.com/blog/90-of-text-messages-are-read-within-3-minutes/. Some research even places the figure as high as 98%. https://mobilemarketingwatch.com/sms-marketing-wallops-email-with-98-open-rate-and-only-1-spam-43866/.

23. Email opening rate, on the other hand, appears to hover around 25%. http://www.smartinsights.com/email-marketing/email-communications-strategy/statistics-sources-for-email-marketing/.



24. If the goal is to present information to the recipient, texting is measurably the most effective way to get it done.

25. In my experience, the telephone number that employers have for their employees is a cell phone number; this is true even though sometimes the telephone number is not identified as a cell phone number. It's not a hardship on an employer to include in the contact information that it shares with us after certification the telephone that it has in its records for each class member. In fact, some employers do not object to our wage lawsuit plaintiffs' requests for that information.

26. The class of opt-ins would benefit by the ease and efficiency of a paperless notice and consent process via email and text message. PDF files that can be signed electronically on traditional computers and on mobile devices can be sent by Plaintiff's counsel via email and text message.

27. For notice via text message, the process is quite simple: First, Plaintiff's counsel would be responsible for sending a text message to cell phone numbers for the putative class members provided by Defendants. The text message would contain an

internet link to an electronic version of the *Notice* and *Consent to Join* forms attached to Plaintiff's Motion for Conditional Certification, For Disclosure of Contact Information, and to Send Notices, which putative class members could print or read in electronic form. Class members could then choose to either print, sign and return a paper copy of the *Consent to Join* form or electronically sign the *Consent to Join* form using the RightSignature service.

28. It is a practical benefit to many putative class members to be able to sign documents electronically and to transmit them via cellphones. It is not a hardship on Defendants for potential opt-ins to receive *Notice* and *Consent*, and to return *Consents to Join* to Plaintiff's counsel, in this manner.

29. The software that we use to obtain electronic signatures is through a website located at www.RightSignature.com. It is a subscription Internet service that allows potential opt-ins to view PDF versions of documents, which they can open on their smartphones and/or computers and sign with their finger or mouse, respectively.

30. RightSignature is an easy and efficient means of obtaining signatures for plaintiffs and potential plaintiffs who are hard to reach or who do not have easy access to computers, much less printers, scanners, or fax machines. Unlike computers, many individuals keep their smartphones with them at all times.

31. While RightSignature is an efficient way to obtain signatures, the process for completing a signature is not completely intuitive. After signing a document, RightSignature requires the signer to press "preview signature." Many signers believe that once they have pressed this option they have signed and submitted the document. In fact, RightSignature requires another step before it will return the signed document to

the sender. The signer must press also press "submit signature" after he or she presses "preview signature." Many potential plaintiffs believe they have opted in to a lawsuit after the first step, when in fact they have not actually submitted a signed document.

32. It is for this reason that the electronic transmittal language that we have requested (as set out in Exhibit 3) is necessary.

33. More information about RightSignature is available at https://rightsignature.com/how-it-works/send.

34. In several collective actions that have been conditionally certified in the Eastern District of Arkansas and Western District of Texas in the past two years, Courts have blessed the "email-out, paperless consent-in" procedure that we have asked for in this case, and it has worked well.

**Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Executed on this 27th day of March, 2020.

*/s/ Josh Sanford*
**JOSH SANFORD**