IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KASEY FOX, et al.**        **PLAINTIFFS**

vs.        No. 4:19-cv-37-KGB

**TTEC SERVICES CORP.**        **DEFENDANT**

## <u>DECLARATION OF BRANDI HENSON</u>

I, Brandi Henson, do hereby swear, affirm and attest as follows, based upon my personal knowledge of the matters contained herein:

1.      My name is Brandi Henson, and I am over the age of eighteen (18) and duly qualified to execute this declaration.

2.      I am a resident and domiciliary of the State of Arkansas.

3.      I was employed by TTEC Services Corp. (hereinafter "Defendant"), to work as a licensed healthcare advocate within three (3) years of the filing of this lawsuit.

4.      Specifically, I was employed by Defendant at its Morrilton call center from September of 2017 to approximately February of 2019.

5.      Defendant's primary business purpose is to offer customer contact management services to its customers. As part of its services, Defendant offers a customer support call center to assist customers with various issues they may encounter while using Defendant's services. Defendant employs various hourly-paid employees at its call centers to accomplish this goal, including healthcare advocates such as myself.

6.      As a healthcare advocate for Defendant, my job duties included answering Defendant's customers' calls and assisting those customers with purchasing health insurance plans.

7.      More specifically, my work for Defendant primarily involved answering calls, answering questions, filling out forms, and providing feedback to Defendant's customers. These are the same job duties performed by other healthcare advocates for Defendant.

8.      I worked with other healthcare advocates and call center employees on a daily basis. I observed other healthcare advocates answering telephone calls from Defendant's customers and assisting those customers.

9.      Defendant's healthcare advocates, including myself, use similar computer networks, software programs and applications in the course of performing our job responsibilities. These programs and applications are integral and an important part of healthcare advocates work, and we cannot perform our jobs effectively without them.

10.     We were required to arrive for our scheduled shifts 15 minutes early in order to boot-up our computers and log into Defendant's various computer networks and software programs. Even though we were logged in to the software necessary for our shift, we were not clocked into Defendant's time and attendance software, and therefore not making an hourly wage.

11.     I, along with other healthcare advocates and call center employees were prohibited from being on the floor more than 15 minutes early, but if we were not at least 15 minutes early, we could not log into Defendant's software and we were penalized for not being prepared to make and receive calls at the moment our shifts begin.

12. Additional compensation deficiencies would arise when we experienced pre-shift technical difficulties or connectivity issues with Defendant's computer networks, software programs, applications or phone systems. During these periods of downtime, healthcare advocates such as myself were unable to get our systems up and running, meaning that we were unavailable to make/take calls at the start of our scheduled shifts.

13. The result of this payment system was that until we were on the phone with one of Defendant's customers, we were not receiving pay, despite the fact that we were still engaged in work that was integral and necessary to perform our jobs.

14. The same compensation deficiencies that arose during our pre-shit boot-up process would also occur at the end of our shift. Defendant's healthcare advocates, including myself, were required to log out of and close down various computer software programs and applications at the end of each sift and subsequent to clocking out of Defendant's timekeeping system. This post-shift process occurred each shift and took 5 to 10 minutes per day, but we were not paid for that time. Like Defendant's pre-shift policy, this policy also resulted in healthcare advocates such as myself not being paid for all time worked, including overtime.

15. I know that other licensed healthcare advocates worked hours that were not recorded on their time sheets because I observed other licensed healthcare advocates arriving before their shifts started in order to log into Defendant's various computer networks and software programs, and Defendant's pay polices applied to all healthcare advocates.

16. Unless I missed a day of work, I regularly worked more than forty (40) hours per week, and I know that Defendant's other licensed healthcare advocates

worked more than forty (40) hours per week because I worked more than forty (40) hours per week, and they were working at the same time as I was.

17.     Based on my personal observation and interaction with other licensed healthcare advocates and call center employees, I estimate that Defendant has employed more than 300 licensed healthcare advocates and call center employees since January 17, 2016.

18.     I was able to interact with other licensed healthcare advocates and call center employees while working for Defendant. Based on my experience talking with them, I believe that there would be others that would want to join this lawsuit if notice were sent to them and they were made aware of their right to claim lawful wages.

**PURSUANT TO 28 U.S.C. § 1746, I VERIFY UNDER PENALTY OF PERJURY UNDER THE LAWS OF THE UNITED STATES OF AMERICA THAT THE FOREGOING IS TRUE AND CORRECT.**

Executed on this 26th day of March, 2020.

**BRANDI HENSON**