IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

**KASEY FOX, et al.**                                                       **PLAINTIFFS**

vs.                                    No. 4:19-cv-37-KGB

**TTEC SERVICES CORP.**                                          **DEFENDANT**

**BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CONDITIONAL
CERTIFICATION, FOR APPROVAL AND DISTRIBUTION OF NOTICE
AND FOR DISCLOSURE OF CONTACT INFORMATION**

**I.   INTRODUCTION AND FACTUAL BACKGROUND**

Plaintiffs, former employees of Defendant, brought this lawsuit on behalf of all

former and current hourly-paid employees of Defendant who are or were denied a lawful

overtime compensation for hours worked in excess of forty (40) hours per week as

required by the AMWA and the FLSA. Defendant operates multiple call centers across

the United States, including two facilities in Arkansas. Defendant's hourly Healthcare

Advocates were not and are not paid for all hours worked or overtime compensation

when performing services for Defendant. In this case, Plaintiffs Yvette Davis, Brandi

Henson, Mashaya Jordan and Lakesha Scott have alleged that Defendant TTEC

Services Corp. ("Defendant"), has a uniform policy and practice of failing to pay its

hourly-paid Healthcare Advocates for all hours worked over forty (40) because

Defendant does not compensate them for certain activities at the beginning and end of

their shifts which are necessary for completing their work. This practice violates the

overtime pay provisions of the Fair Labor Standards Act ("FLSA").

Accordingly, Plaintiffs request that this Court conditionally certify a collective

**Page 1 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

action pursuant to Section 216(b) of the FLSA. In addition, Plaintiffs request approval of their practical, common-sense plan for facilitating notice to the collectives. Because the clock is running against all potential opt-ins, Plaintiffs request expedited review of their Motion as described below.

## II.  ARGUMENT

### A. This Court Should Conditionally Certify the Proposed Collective as a Collective Action for Notice Purposes.

This Court should conditionally certify the proposed group as a collective action for notice purposes.  Section 1 below explains legally what conditional certification in an FLSA case means, what Plaintiffs must prove in order to have this case conditionally certified as a "collective action," and why expedited consideration of the motion for certification and notice to the collectives is important.  Section 2 describes how and why Plaintiffs have met the lenient standard for conditional certification of a collective action in this stage of the case.

### 1. Plaintiffs may obtain conditional certification of this collective if Plaintiffs make a modest factual showing that Plaintiffs are "similarly situated" to the members of the collective.

Plaintiffs may obtain early conditional certification of the collective if Plaintiffs make a modest factual showing that Plaintiffs are "similarly situated" to the other members of the collective.  In *Hoffmann-La Roche, Inc. v. Sperling*, the Supreme Court of the United States held that district courts have the discretion to certify a collective and issue orders authorizing notice to potential members of a collective action of the opportunity to "opt-in" to a collective action.  493 U.S. 165, 169 (1989). The key issue presented to the court exercising its discretion to certify a collective is whether the persons to whom notice would go are "similarly situated" to plaintiffs.  29 U.S.C. §

**Page 2 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

216(b); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 583 (6th Cir. 2009); *Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095 (10th Cir. 2001).

Neither the FLSA nor the Eighth Circuit have expressly defined what "similarly situated" means for purposes of determining when a collective action is appropriate; however, a majority of district courts in the Eighth Circuit have adopted the two-tiered approach to certification of collective actions, as established by *Mooney v. Aramco Service*, 4 F.3d 1207 (5th Cir. 1995).  *See, e.g., Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007); *Madden v. Lumber One Home Center of Stuttgart, Inc.*, No. 4:10-cv-1162-JLH, 2010 U.S. Dist. LEXIS 127558, at *13 (E.D. Ark. Dec. 2, 2010); *Bouaphakeo v. Tyson Foods, Inc.*, 564 F. Supp. 2d 870, 890–891 (N.D. Iowa 2008).

This two-tiered approach envisions an initial "conditional certification" for notice purposes early on in a case (known as the "notice stage"), and then a second opportunity to evaluate the propriety of certification when a defendant moves for decertification following the close of discovery. *Salter v. Onyx Corp.*, No. 4:10-cv-906-JLH, 2011 U.S. Dist. LEXIS 23291, at *3 (E.D. Ark. Feb. 24, 2011); *See also Robertson v. LTS Management Services, LLC*, 642 F. Supp. 922, 925 (W.D. Mo. 2008). This two-step certification inquiry is described in *Mooney* as follows:

> The first determination is made at the so-called "notice-stage." At the notice stage, the district court makes a decision—usually only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members.
>
> Because the Court has minimal evidence this determination is made using a fairly lenient standard and typically results in "conditional certification" of a representative class. If the district court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in." The action proceeds as a representative action throughout discovery.

Page 3 of 21
Kasey Fox, et al. v. TTEC Services Corp.
U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB
Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.

> The second determination is typically precipitated by a motion for "decertification" by the Defendant usually filed after discovery is largely complete and the matter is ready for trial. At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly situated, the district court decertifies the class, and the opt-in Plaintiffs are dismissed without prejudice. The class representatives—*i.e.*, the original Plaintiffs—proceed to trial on their individual claims.

4 F. 3d at 1213–14. Courts in the Eastern and Western Districts of Arkansas have followed the framework of the two-tiered approach outlined in *Mooney. See, e.g.*, Order at 6–7, *Lochridge v. Lindsey Management, et al.*, 5:12-cv-5047-JLH (W.D. Ark. Feb. 4, 2013), ECF No. 61; Order at 4, *Teramura v. Walgreen Co.*, 5:12-cv-5244-JLH (W.D. Ark. Mar. 7, 2013), ECF No. 39; Order at 3–4, *Taylor v. Drugstore Cowboys, Inc.*, Case No. 4:11-cv-269 (E.D. Ark. Mar. 22, 2012), ECF No. 65; *Watson v. Surf-Frac Wellhead Equipment Co., Inc.*, No. 4:11-cv-843-KGB, 2012 U.S. Dist. LEXIS 150968, at *2–3 (E.D. Ark. Oct. 18, 2012) (collective certification granted Oct. 18, 2012); *In re Pilgrim's Pride Fair Labor Stds. Act Litig.*, 2008 U.S. Dist. LEXIS 93966, at *6–9 (W.D. Ark. Mar. 13, 2008); *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003).

At the notice stage, a court does not make findings on legal issues or focus on whether there has been an actual violation of the law. *Pilgrim's Pride*, 2008 U.S. Dist. LEXIS 93966, at *9. The Court also refrains from making credibility determinations or resolving contradictory evidence. *Id.* The plaintiff's burden is "lenient" and may be met by making substantial allegations of class-wide discrimination that are supported by affidavits. *Freeman*, 256 F. Supp. 2d at 941.

Not only is fact finding as to the merits inappropriate at the notice stage, but so is

**Page 4 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

fact finding as to the issue of whether plaintiffs and the collectives are similarly situated. *See id*. (stating that courts do not *resolve contradictory evidence*); see also generally, *Longcrier v. HL-A Co., Inc.,* 595 F. Supp. 2d 1218 (S.D. Ala. 2008).  In *Longcrier v. HL-A Co., Inc.*, six plaintiffs in the Southern District of Alabama moved to certify a collective consisting of all hourly employees who were employed by defendant in various capacities at its automobile parts manufacturing facility at any time during the three years preceding the filing of the complaint. 595 F. Supp. 2d 1218, 1220-21 (S.D. Ala. 2008).  Even with so broad a proposed collective, the court granted plaintiffs' motion for certification and court-approved notice.  *Id*. at 1242.

The defendant argued that the plaintiffs were not "similarly situated" because the hourly positions held by collective members covered a wide range of job titles, duties, pay ranges, and supervisors.  *Id*. at 1238.  Over the defendant's objections, the court held that plaintiffs' declarations and complaint allegations amounted to a substantial showing that all defendant's nonexempt employees were treated similarly and were subject to the same pay practices and policies with regard to "off-the-clock" work, rounding hours, and unpaid work during meal breaks.  *Id*.

Importantly, the court further explained how factual disputes over the "similarly situated" requirement should be resolves at the second stage:

> At most, Defendant's evidence may create disputes of fact as to whether all hourly employees are or are not subject to the same policies.  Those factual disputes may properly be addressed after discovery at the second stage of the FLSA collective action process . . . , but they do not constitute a valid basis for denying conditional class certification today.

*Id*. (citing *Carmody v. Florida Ctr. For Recovery, Inc.*, No. 05-14295, 2006 U.S. Dist. LEXIS 81640, at *4 (S.D. Fla. Nov. 7, 2006) (explaining that it would be improper to

**Page 5 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

engage in fact-finding to determine conclusively as to whether the putative plaintiffs are similarly situated, where pleadings and supporting affidavits alleged facts sufficient to satisfy conditional class certification inquiry).

Because of this lenient standard, and because courts do not resolve disputes of fact at this stage, courts regularly grant conditional certification based solely upon a plaintiff's complaint and supporting affidavits. *See Littlefield v. Dealer Warranty Services, LLC*, 679 F. Supp. 2d 1014, 1017 (E.D. Mo. 2010) ("In a typical case, the court decides whether to conditionally certify a class based solely on the plaintiffs' affidavits."); *Parker v. Rowland Express, Inc.*, 492 F. Supp. 2d 1159, 1164 (D. Minn. 2007) ("At the notice stage, the district court makes a decision—usually based only on the pleadings and any affidavits which have been submitted—whether notice of the action should be given to potential class members."); *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 940 (W.D. Ark. 2007); Op. and Order, *Lopez v. Ozark Mountain Poultry, Inc.*, Case No. 5:13-cv-5272-TLB (W.D. Ark. June 17, 2014), ECF No. 34 (certifying a collective based on a single declaration).

Further, a plaintiff need not show that her position is identical to the collectives members' positions, only that her position is similar to those of the absent collective members. *Freeman v. Wal-Mart Stores, Inc.*, 256 F. Supp. 2d 941 (W.D. Ark. 2003) (citing *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996)). The "similarly situated" determination requires only a modest factual showing. *Perez-Benites v. Candy Brand, LLC*, No. 07-cv-1048, 2008 U.S. Dist. LEXIS 91402, at *3 (W.D. Ark. Oct. 31, 2008). Although not defined by the FLSA, case law typically requires some showing that the plaintiff and members were victims of a common decision, policy, or plan of the

Page 6 of 21
Kasey Fox, et al. v. TTEC Services Corp.
U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB
Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.

employer that affected all members of the collective in a similar fashion. *Smith v. Frac Tech Services, Ltd.*, 4:09-cv-679-JLH, 2009 U.S. Dist. LEXIS 109930, at *13 (E.D. Ark. Nov. 24, 2009) (citing *Resendiz-Ramirez,* 515 F. Supp. 2d at 937); *Katusch v. Premier Communications*, 504 F. Supp. 2d 685 (W.D. Mo. 2007)); *see also Thiessen v. General Electric Capital Corp.*, 267 F.3d 1095, 1102 (10th Cir. 2001) (first-round "similarly situated" determination "requires nothing more than substantial allegations that the class members were together the victims of a single decision, policy, or plan.").

Notably, several courts in the Eastern District of Arkansas have granted conditional certification of a companywide collective of employees against defendants when only one plaintiff appeared at the beginning of the case.  The Hon. Leon Holmes granted conditional certification of a nationwide collective in a single-plaintiff case, holding that [t]he undersigned does not require plaintiffs in a Fair Labor Standards Act case to establish that other potential class members desire to opt in." Order, *Adams et al. v. United Cerebral Palsy of Central Arkansas, Inc., et al.*, 4:16-cv-930-JLH (E.D. Ark. Dec. 28, 2016), ECF No. 14.   Similarly, the Hon. Kristine Baker recently granted conditional certification of a nationwide collective in a single-plaintiff case, holding that "[plaintiff] does not have the burden of offering evidence that other employees are interested in joining his proposed class as a prerequisite for conditional certification" in those circumstances.  Order, *Lamar, et al. v. Lacy One, LLC, et al.,* 4:16-cv-135-KGB (E.D. Ark. March 9, 2016), ECF No. 20. It simply is not required that there be more than one plaintiff to initiate a conditional collective action under Section 216 of the FLSA. Indeed, the purposes of the certification process are best served when the fewer, more vocal, employees assert rights on behalf of the larger group against the defendant.

**Page 7 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

In general, the benefits of the two-tiered approach from *Mooney* are best realized when certification and notice are granted as soon as possible at the beginning of the case, prior to discovery. The second decertification stage mitigates the breadth and leniency of the first stage by allowing for decertification if it turns out, after discovery is completed, that the collective is not sufficiently similar to allow for an efficient adjudication of material, common issues and facts.  In sum, the point of the two-tiered approach to 216(b) collectives is to provide a lenient stage, where timely notice is provided, to preserve the rights of potential members, balanced by a more stringent stage to make sure that at least some issues in the case can be adjudicated on a collective-wide basis.

2. <u>This Court should conditionally certify the collective proposed by Plaintiffs.</u>

This case is at the notice stage and as such is subjected to the lenient standard based solely on pleadings and affidavits. The pleadings and attached affidavits contain an abundance of information supporting Plaintiffs' claims that there are many other individuals similarly situated. Plaintiffs Yvette Davis, Brandi Henson, Mashaya Jordan and Lakesha Scott represent a class of hourly-paid Healthcare Advocates who entered into a relationship with Defendant for the purpose of earning money by working as hourly paid Healthcare Advocates for Defendant. Every hourly Healthcare Advocate employee's relationship with Defendant was subject to Defendant's universal policies, which violated the FLSA, among other laws.

Plaintiffs have made a sufficient factual showing that there are other employees who are similarly situated to Plaintiffs in this case. Defendant's primary business purpose is to offer call center services to its customers. As part of these services,

**Page 8 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

Defendant operates customer support call centers to assist with fielding inbound and outbound calls from customers of Defendant's clients. Plaintiffs worked as hourly-paid Healthcare Advocates for Defendant's call centers. Declaration of Yvette Davis ("Decl. Davis") ¶ 3. ECF No. 49-7; Declaration of Brandi Henson ("Decl. Henson") ¶ 3. ECF No. 49-8. As Healthcare Advocates, Plaintiffs' primary duties were answering Defendant's customers' calls and assisting customers with things like purchasing health insurance plans. Decl. Davis ¶¶ 6-7; Decl. Henson ¶¶ 6-7. As Healthcare Advocates, Plaintiffs often observed and worked with Defendant's other Healthcare Advocates who performed the same type work for Defendant. Decl. Davis ¶¶ 7-8; Decl. Henson ¶¶ 7-8.

As a standard practice, Defendant pays the members of the proposed class an hourly rate of pay. Decl. Davis ¶ 5; Decl. Henson ¶ 5. Defendant often requires its Healthcare Advocates to work in excess of forty hours per week. Decl. Davis ¶ 16; Decl. Henson ¶ 16. However, Defendant does not pay Plaintiffs and other Healthcare Advocates for all hours worked because Defendant fails to pay for time spent booting up computers and logging into various computer networks and software programs as well as for time spent logging out of and shutting down those programs. Decl. Davis ¶¶ 10-14; Decl. Henson ¶¶ 10-14. It is this uniform practice that underlies Plaintiffs' allegation that Defendant has violated the overtime wage provisions of the FLSA with respect to Plaintiffs and for all other Healthcare Advocates.

Plaintiffs estimate that Defendant has employed at least 300 hourly-paid Healthcare Advocates since March 20, 2015, that all used similar computer networks, software programs and applications in the course of performing their job and who all performed work for which they weren't paid. Decl. Davis ¶ 9, 15, 17; Decl. Henson ¶ 9,

**Page 9 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

15, 17.

In sum, Plaintiffs and the putative class members were universally paid an hourly rate, were required to work hours in excess of forty per week, and were not paid for all hours worked over forty per week. These common practices were imposed by Defendant's unified corporate management. These facts are more than sufficient to meet Plaintiff's lenient burden to show that the potential class members are similarly situated. Therefore, this Court must certify the proposed class of hourly-paid Healthcare Advocates and make appropriate orders for notice.

**B.  This Court Should Approve Plaintiffs' Proposed Collective Action Notice and Consent Forms, Grant Leave for Plaintiffs to Send Notice through Mail and Email, and Order Defendant to Provide Contact Information for Potential Opt-Ins.**

If this Court grants conditional certification for notice purposes, the Court will need to make decisions about how to facilitate notice. Accordingly, Plaintiffs request that this Court exercise its broad legal discretion and (1) approve of the language of Plaintiff's proposed collective action *Notice* (ECF No. 49-1) and *Consent to Join* forms (ECF No. 49-2, 49-4); (2) grant leave for Plaintiffs to send Notice and Consent to Join forms through U.S. Mail and email; (3) grant leave to send a Follow-Up *Notice* (ECF No. 49-1) and *Consent* (ECF No. 49-4) via email twenty-one days after the initial distribution of the *Notice*; (4) approve of the proposed text for the electronic transmission (ECF No. 49-3) to members of the collective via email (or, alternatively, text message); (5) grant a period of ninety days in which to distribute the *Notice* and *Consents* and allow for opt-ins to file *Consents to Join*; and (6) order Defendant to provide relevant contact information for potential opt-ins.

**Page 10 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

1. <u>The form and scope of Plaintiffs' proposed notice is appropriate.</u>

In furtherance of the FLSA's "broad remedial" purpose, courts have the authority to notify potential opt-in plaintiffs that they may join an existing action early in the proceedings. *Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 173 (1989); *See also Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1047 (Mar. 22, 2016); *Hussein v. Capital Bldg. Servs. Grp., Inc.,* 152 F. Supp. 3d 1182, 1190 (D. Minn. 2015). A district court "has broad discretion regarding the 'details' of the notice sent to potential opt-in plaintiffs." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012). Notice informs potential plaintiffs "of the facts needed to make an informed decision whether to opt-in." *Fisher v. Michigan Bell Telephone Company*, 665 F. Supp. 2d 819, 829 (E.D. Mich. 2009). While there are no well-defined rules for the form of notice, the general requirement is that the notice must be fair and accurate. *See e.g., id.; Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill 2007).

Further, courts should exercise their broad discretion to facilitate notice in a way that reaches the largest possible number of potential opt-in plaintiffs. *See Perrin v. Papa John's Int'l, Inc.*, No. 4:09-cv-1335-AGF, 2011 U.S. Dist. LEXIS 117046, at *5 (E.D. Mo. Oct. 11, 2011) ("The better course is to determine what constitutes fair and proper notice based on the facts of each case . . . At this stage of the litigation, justice is most readily served by notice reaching the largest number of potential plaintiffs." (internal citations and quotation marks omitted)).

Plaintiffs' proposed FLSA collective action notice (ECF No. 49-1) provides potential opt-in plaintiffs with an accurate description of this lawsuit, their legal rights, and the process for participating in the case. The notice is substantially similar to

**Page 11 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

collective action notices that have been distributed in numerous other collective actions. *See*, *e.g.*, *Casarez v. Producers Serv. Corp.*, No. 2:17-cv-1086, 2018 U.S. Dist. LEXIS 88370, at *21 (S.D. Ohio May 25, 2018); *Adams v. United Cerebral Palsy of Cent. Ark., Inc.*, No. 4:16-CV-930 JLH, 2017 U.S. Dist. LEXIS 177470, at *3 (E.D. Ark. Apr. 27, 2017). It should be approved. *See Hoffmann-La Roche*, 493 U.S. at 172, 174 (explaining that employees should receive "accurate and timely notice concerning the pendency of the collective action, so that they can make informed decisions about whether to participate," and that notice should "respect judicial neutrality . . . tak[ing] care to avoid even the appearance of judicial endorsement of the merits of the action.").

Plaintiffs ask this Court for approval to send notice to all individuals who worked as Healthcare Advocates for Defendant at any time after January 17, 2016, which includes the three years preceding the filing of Plaintiffs' Complaint. This captures every qualified employee for Defendant who could potentially fall within the maximum three-year statute of limitations under the FLSA. Furthermore, this keeps the door open for this Court to grant equitable tolling to some or all potential plaintiffs if the facts support it.[1] To facilitate this request, Plaintiffs request approval of Plaintiffs' proposed notice-related documents, method of distribution, and 90-day opt-in period, as set forth below.

---

[1]     The doctrine of equitable tolling can, under the right circumstances, toll the statute of limitations in FLSA cases. *See, e.g.*, Op. and Order at 10–12, *Lopez*, No. 5:13-cv-05272-TLB, ECF No. 34 (granting equitable tolling where there was a long period of time between filing of motion for collective action and the order granting the motion); Memorandum Op. and Order at 7–10, *Whitworth*, No. 6:13-CV-06003-RTD, ECF No. 22; *see also, Hughes v. Region VII Area Agency on Aging*, 542 F.3d 169 (6th Cir. 2008); *Adams v. Tyson Foods, Inc.*, No. 07-CV-4019, 2007 U.S. Dist. LEXIS 38511 (W.D. Ark. May 25, 2007); *Chao v. Va. Dept. of Transp.*, 291 F.3d 276 (4th Cir. 2002); *Partlow v Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757 (9th Cir. 1981). Indeed, courts have held that the equitable tolling doctrine "is read into every federal statute of limitation." *Kamens v. Summit Stainless, Inc.*, 586 F. Supp. 324, 328 (E.D. Penn. 1984) (quoting *Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946)).

Page 12 of 21
Kasey Fox, et al. v. TTEC Services Corp.
U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB
Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.

2. Distribution of collective action notices by paper and electronic means is becoming standard.

Because in recent years electronic communications have become more reliable than traditional mail as a means of reaching collective action members, Plaintiffs ask the Court to authorize distribution of notice using a combination of traditional and electronic methods. Specifically, Plaintiffs proposes to send notice to potential plaintiffs simultaneously via U.S. Mail and email (or, alternatively, via text message). Distribution by multiple forms serves the purpose of "ensur[ing] that potential plaintiffs receive notice in a timely and efficient manner." *Hussein v. Capital Bldg. Servs. Grp., Inc.*, 152 F. Supp. 3d 1182, 1198 (D. Minn. 2015).

Electronic distribution of collective action notices is "in line with the current nationwide trend. Moreover, it advances the remedial purpose of the FLSA, because service of the notice by two separate methods increases the likelihood that all potential opt-in plaintiffs will receive notice of the lawsuit, and of their opportunity to participate." *Atkinson v. TeleTech Holdings, Inc.*, No. 3:14-cv-253, 2015 U.S. Dist. LEXIS 23630, at *12 (S.D. Ohio Feb. 26, 2015).

Electronic communication in the form of email is already a common, appropriate and efficient manner of communicating with plaintiffs and members of collectives that is often used in conjunction with traditional mailing. *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012) ("With regard to [plaintiff's request to use] email to notify potential plaintiffs of this litigation, communication through email is now the norm.") (internal editing and quotation marks omitted). As text messaging has supplanted email as a popular way to communicate electronically, Courts have begun to approve text-messaged notice in collective actions. *See*, *e.g.*, *Bradley v. Crittenden Cty.*, No. 3:18-cv-

**Page 13 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

29-DPM, 2018 U.S. Dist. LEXIS 188771, at *3 (E.D. Ark. Oct. 5, 2018); *Vasto v. Credico (USA) LLC*, 2016 U.S. Dist. LEXIS 60158, at *50 (S.D.N.Y. May 5, 2016). In many cases, Courts endorse notice via three or more methods at once.[2] In *Irvine v. Destination Wild Dunes Mgmt.*, the Court reasoned as follows:

> The request that notice be distributed via direct mail, email and text messaging appears eminently reasonable to the Court. This has become a much more mobile society with one's email address and cell phone number serving as the most consistent and reliable method of communication. Political candidates now routinely seek out their supporters' cell phone numbers and email addresses because traditional methods of communication via regular mail and land line telephone numbers quickly become obsolete.

132 F. Supp. 3d 707, 711 (D.S.C. 2015).

There is good reason to use electronic distribution methods in addition to U.S. Mail. Mail delivery problems are unavoidable in collective actions. *See* Decl. of Josh Sanford ("Sanford Decl."), ¶¶ 5, 7–15. ECF No. 49-6. In counsel's experience, mail delivery problems have actually prevented some members of collectives from joining collective actions when they in fact wanted to join. *See Id*. Notices sent by the Sanford Law Firm have been lost, even when the addresses were correct. *Id*. at ¶ 9. Not only are notices lost going to collective members, but they have also been lost after having been signed and mailed back to the Sanford Law Firm. *Id*. at ¶¶ 8–10. In other cases,

---

[2]     *See Coates, et al. v. Dassault Falcon Jet Corp.*, No. 4:17-cv-372-JLH, ECF No. 34 (E.D. Ark. 11/21/17) (authorizing notice via mail, email, reminder postcard); *Kilpatrick, et al. v. Homeality, LLC*, No. 4:16-cv-885 BSM, ECF No. 22 (E.D. 09/26/17 (authorizing notice via mail, email, and workplace posting); *Stricklin v. Drivenforce, Inc.*, No. 4:15-cv-202-BRW, ECF No. 28 (E.D. Ark. 10/22/15) (authorizing notice via mail, email, reminder postcard and workplace posting); *Hussein v. Capital Bldg. Servs. Grp.*, 2015 U.S. Dist. LEXIS 157572 (D. Minn. Nov. 20, 2015) (authorizing notice via mail, posted notice, reminder letter and reminder email over defendant's objection); *Shoots v. iQor Holdings US Inc.*, 2015 U.S. Dist. LEXIS 141617, *71–73 (D. Minn. Oct. 19, 2015) (authorizing notice via mail, email, workplace posting and reminder notice); *Rhodes v. Truman Med. Ctr., Inc.*, 2014 U.S. Dist. LEXIS 133281, *11–12 (W.D. Mo. Sept. 23, 2014) (authorizing notice via mail, email, and workplace posting, as well as a reminder postcard to "help ensure that all putative Plaintiffs are provided an adequate opportunity to 'opt in' to the action"); *Margulies v. Tri-County Metro. Transp. Dist. of Or.*, No. 3:13-cv-00475-PK, 2013 U.S. Dist. LEXIS 146484, *59–61 (D. Or. Oct. 10, 2013) (authorizing notice via mail, email and workplace posting).

Page 14 of 21
Kasey Fox, et al. v. TTEC Services Corp.
U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB
Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.

Plaintiffs' counsel has received telephone calls from recipients of follow-up postcards who did not receive the original notice. *Id*. at ¶ 12. Plaintiffs' counsel has also received undeliverable envelopes as much as 1,010 days after their original mailing. *Id*. at ¶ 14. Using email or text message as a supplemental means of distributing notice alleviates many of the problems presented by U.S. Mail.

> 3.   Plaintiffs' proposed method for distributing notice via email is tested and reliable.

Plaintiffs' proposed procedure for disseminating notice by email is simple and easy for the Court to monitor. If approved by the Court, Plaintiffs' counsel will send an email to each collective member with the final version of the collective action Notice (ECF No. 49-1) attached. The body of the email will contain a link to a version of the Consent form (ECF No. 49-4) that can be signed electronically using the RightSignature service.[3] The proposed email text, which is attached to Plaintiffs' Motion as Exhibit 3 (ECF No. 49-3), directs the reader to the court-approved notice and contains instructions for signing the Consent electronically to avoid some minor but common mistakes. Decl. Sanford. at ¶¶ 33–34. Several district courts within Arkansas have approved of similar email notice processes. *See*, *e.g.*, *Adams*, 2017 U.S. Dist. LEXIS 177470, at *4; Order, *Lopez v. Ozark Mountain Poultry, Inc.*, No. 5:13-cv-5272-TLB (W.D.

---

[3]     RightSignature is a subscription Internet service that allows Plaintiff's counsel to send PDF documents to collective members' email addresses, which they can open on their smartphones and/or computers and sign with their finger or mouse, respectively. Sanford Decl. ¶ 28. The software that Plaintiff's counsel uses to obtain electronic signatures is through a website located at www.RightSignature.com. Sanford Decl. ¶ 28. More information about RightSignature is available at https://rightsignature.com/how-it-works/send. Many courts have already approved of the use of electronic signatures generally. *See Kesley v. Entm't U.S.A., Inc.*, 67 F. Supp. 3d 1061, 1073 (D. Ariz. 2014); *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510, 518 (W.D. Tex. 2015); *Foster v. Nova Hardbanding, LLC*, No. CV 15-1047 CG/LAM, 2016 U.S. Dist. LEXIS 53426, at *20 (D.N.M. Apr. 20, 2016); *Woods v. Vector Mktg. Corp.*, No. C-14-0264 EMC, 2015 U.S. Dist. LEXIS 32370, at *16-17 (N.D. Cal. Mar. 16, 2015); *White v. Integrated Elec. Techs., Inc.*, No. 10-2186, 2013 U.S. Dist. LEXIS 83298, at *39 (E.D. La. June 13, 2013); *Jones v. JGC Dall. LLC*, No. 3:10-CV-2743-O, 2012 U.S. Dist. LEXIS 185042, at *18 (N.D. Tex. Nov. 29, 2012).

**Page 15 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

Ark. June 17, 2014), ECF No. 34.

### 4. Ninety days is a common and reasonable opt-in period.

Plaintiffs request a period of ninety (90) days during which to distribute notice and file opt-in plaintiffs' consent forms with the Court. "Notice periods may vary, but numerous courts around the country have authorized ninety-day opt-in periods for collective actions." *Butler v. DirectSat USA, LLC*, 876 F. Supp. 2d 560, 575 (D. Md. 2012); *see also Lopez*, No. 5:13-cv-05272-TLB, ECF No. 34 (W.D. Ark. June 17, 2014) (granting a ninety-day opt-in period); Order at 11, *Teramura v. Walgreen Co.*, No. 5:12-cv-05244-JLH, ECF No. 39 (W.D. Ark. Mar. 7, 2013) (same); *Watson v. Surf-Frac Wellhead Equipment Co., Inc.*, No. 4:11-cv-843-KGB, 2012 U.S. Dist. LEXIS 150968, at *10 (E.D. Ark. Oct. 18, 2012) (same). Many of the potential collective members may have current addresses and phone numbers that may differ from Defendant's records, and a ninety-day opt-in period will allow a reasonable time for Plaintiffs' counsel to deal with returned mail and get notices to their intended recipients.

### 5. This Court should approve of the sending of a reminder postcard via U.S. Mail and a follow-up Notice via email twenty-one (21) days after Notice is sent.

Plaintiffs further request that this Court permit the sending a reminder postcard by U.S. Mail and a follow-up Notice by email to potential opt-ins who do not respond to the initial notice within twenty-one days. Courts around the country, including courts within Arkansas, regularly approve dissemination of a reminder postcard. *See, e.g.*, Op. and Order at 9–10, *Lopez v. Ozark Mountain Poultry, Inc.*, No. 5:13-cv-05272-TLB (W.D. Ark. June 17, 2014), ECF No. 34 (granting leave to send follow-up post card to collective members who do not respond to written notice within thirty days); Order at 6,

**Page 16 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

*Bonton v. Centerfold Entertainment Club, Inc.*, Case No. 6:14-cv-6074-RTD (W.D. Ark. Oct. 9, 2014), ECF No. 12 (same); *Harger v. Fairway Mgmt.*, 2016 U.S. Dist. LEXIS 74373, *12 (W.D. Mo. June 8, 2016); *Woods v. Caremark PHC, LLC*, 2016 U.S. Dist. LEXIS 138021, *12 (W.D. Mo. Aug. 2, 2016).[4] The reminder postcard serves the important purpose of "ensur[ing] that all putative Plaintiffs are provided an adequate opportunity to 'opt in' to the action." *Rhodes v. Truman Med. Ctr., Inc.*, 2014 U.S. Dist. LEXIS 133281, *11–12 (W.D. Mo. Sept. 23, 2014).

Likewise, the emailed follow-up notice serves the same purpose as the reminder postcard and also serves what the Supreme Court in *Hoffmann-La Roche v. Sperling* recognized as section 216(b)'s "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. 165, 172 (1989). The emailed follow-up notice would utilize the same distribution language as the initial emailed notice. See ECF No. 14-3.

6. <u>Plaintiffs alternatively request that this Court approve of the manner and method of distributing notice by text message in the event that 1) distribution via email message is either impossible or unsuccessful; or 2) this Court chooses to deny Plaintiffs' request for distribution of notice via email.</u>

If this Court approves of distribution via email as outlined above, there may be circumstances in which Defendant does not have cell phone information for collective members or in which attempted distribution via email is simply unsuccessful. In these circumstances, or in the event that this Court chooses to deny Plaintiffs' request for distribution of notice by means of email, Plaintiffs alternatively request that this Court approve of distributing Notice and Consent to Join forms via text message to all known cell phone numbers belonging to the collective members. As previously discussed,

---

[4]     *See also* Footnote 2.

**Page 17 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

many courts have approved of the use of text messaging as part of a multi-platform method of distributing notice.

If the Court directs notice via text message, Plaintiffs' counsel will send a text message to cell phone numbers for the collective members provided by Defendant. Exhibit 3 contains the language that Plaintiff proposes for the text message to be sent to collective members. *See* ECF No. 49-3. When the recipient clicks on the link in the text message, he or she will be taken to a website containing electronic copies of the court-approved Notice (ECF No. 49-1) and Consent to Join (ECF No. 49-4). From the website, collective members may print the Notice or read it in electronic form. Collective members who wish to join the lawsuit can then choose to print, sign and return a paper copy of the Consent to Join form or electronically sign the Consent to Join form using the RightSignature service.[5] This is similar to the process used in *Dempsey v. Jason's Premier Pumping Servs., LLC*, No. 15-cv-703-CMA-NYW, 2015 U.S. Dist. LEXIS 187322, at *4-5 (D. Colo. Nov. 11, 2015). *See also* Order, *Bradley et al. v. Crittenden County, Arkansas*, No. 3:18-cv-29-DPM, ECF No. 51 (E.D. Ark. Nov. 5, 2018).

    7.  <u>This Court should order Defendant to provide the names, last known mailing addresses, and last known work and personal email addresses and cell phone numbers in an electronically manipulatable format.</u>

To facilitate the sending of the Notice and Consent to Join, this Court should order Defendants to provide contact information for collective members. *Hoffmann-La Roche*, 493 U.S. 165, 170 (1989). Plaintiffs ask this Court to provide for the following information no later than seven (7) days after entry of an Order certifying this case as a collective action for each individual who meets the collective definition: (1) name,

---

[5]    *See* Footnote 3, *supra*, for more information regarding RightSignature.

**Page 18 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

including any aliases he or she may have gone by or goes by now; (2) last known mailing address; (3) any and all cell phone numbers of which Defendant is aware; (4) any and all email addresses of which Defendant is aware, whether personal or company-sponsored. This information is in Defendant's possession, not Plaintiffs'. Plaintiffs request that this Court direct Defendant to provide this information in a manipulatable electronic format such as Microsoft Word or Excel. Any other manner of providing the contact information will only result in unnecessary delay and expense.

### III.   EXPEDITED REVIEW REQUIRED

Plaintiffs request expedited consideration of their certification motion. Plaintiffs in collective actions are entitled to such treatment. Order, *Adams et al. v. United Cerebral Palsy of Central Arkansas, Inc., et al.*, 4:16-cv-930-JLH (E.D. Ark, April 27, 2017), ECF No. 14 ("Because this case needs to be expedited, the Court will not write a lengthy opinion discussing the law of conditional certification.") "Sending notice to potential collective members early in a case facilitates the broad remedial purpose of the FLSA and promotes efficient case management." *Boudreaux v. Schlumberger Tech. Corp.*, 2015 U.S. Dist. LEXIS 22870 (W.D. La. February 25, 2015).[6] In FLSA collective actions—unlike Rule 23 collective actions—the statute of limitations for the FLSA claims of potential opt-in plaintiffs is *not tolled* by a plaintiff's initial filing of the complaint absent a Court order. 29 U.S.C. § 256(b). Thus, delay in disseminating notice to potential plaintiffs can prejudice their rights. *See Gortat v. Capala Bros., Inc.*, No. 07-cv-3629, 2010 WL 1423018, at *9 (E.D.N.Y. Apr. 9, 2010) ("Because the statute of limitations for FLSA claims continues to run for each individual plaintiff until he or she opts in . . . early

---

[6]      *See also Garner v. G.D. Searle Pharmaceuticals & Co.*, 802 F.Supp. 418 (M.D. Ala. Oct. 30, 1981) (citing *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 173 (1989))

Page 19 of 21
Kasey Fox, et al. v. TTEC Services Corp.
U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB
Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.

certification and notice are favored in order to protect plaintiffs' rights.").[7]

## IV.   CONCLUSION

Plaintiffs have met the lenient burden imposed at the conditional certification stage. Because Defendant's policies that underlie Plaintiffs' allegations of FLSA violations are the same for Plaintiffs and all of the collective members, Plaintiffs and collective members are similarly situated as victims of a common decision, policy, or plan of the employer that affected all collective members in a similar fashion. For these reasons, this Court should conditionally certify this case as a collective action. To facilitate notice to the collectives, Plaintiffs propose that the Court make the following reasonable, common-sense orders:

(a)    Approve Plaintiffs' proposed collective action mail Notice and mail Consent to Join to be sent via U.S. Mail to members of the collectives;

(b)    Approve of Plaintiffs' proposed email message language to be sent to the collectives via email;

(c)    Approve of Plaintiffs' proposed text message language to be sent via text message to persons who cannot be reached via email;

(d)    Approve of Plaintiffs' proposed electronic version of the Consent to Join form;

(e)    Approve of the use of the internet link to electronic versions of the Notice and Consent to Join forms;

(f)    Approve of the use of RightSignature to facilitate electronic signature and submission of Consent to Join forms;

(g)    Allow an opt-in period of ninety (90) days to begin seven (7) days after Defendant provides the contact information for the potential opt-in plaintiffs;

(h)    Approve of and grant leave for Plaintiffs to send Notice to potential opt-in

---

[7]    *Accord Smith v. Lowe's Companies, Inc.*, No. 2:04-cv-774, 2005 WL 6742234, at *3-4 (S.D. Ohio May 11, 2005) (Because "statute of limitations period continues to run against each potential collective member . . . it is *widely accepted* that, at the notice stage . . . the plaintiff's burden . . . is *extremely light.*") (emphasis added).

**Page 20 of 21**
**Kasey Fox, et al. v. TTEC Services Corp.**
**U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB**
**Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.**

plaintiffs via U.S. Mail and email (or alternatively text message), with a Follow-Up Notice via email to potential collective members who do not respond within twenty-one (21) days of the sending of the Notice;

(i)     Order Defendant to produce names, addresses, and any and all email addresses (or alternatively, cell phone numbers) for potential opt-in plaintiffs, in an electronically manipulatable format, such as Excel, within seven (7) days after entry of such an order.

All these steps are common-sense, practical solutions to giving notice to potential

plaintiffs to this lawsuit.

Respectfully submitted,

**KASEY FOX, REJIA FOOTS, LAKESHA SCOTT, TEMISHA DANIEL, MASHAYA JORDAN, BRANDI HENSON, YVETTE DAVIS, ANTIONETTE LANE, KIRSTIE KELLY AND LATRICE PETERSON-DAVIS, Each Individually and On Behalf of All Those Similarly Situated, PLAINTIFFS**

SANFORD LAW FIRM, PLLC
ONE FINANCIAL CENTER
650 SOUTH SHACKLEFORD, SUITE 411
LITTLE ROCK, ARKANSAS 72211
TELEPHONE: (501) 221-0088
FACSIMILE: (888) 787-2040

Sean Short
Ark. Bar No. 2015079
sean@sanfordlawfirm.com

Stacy Gibson
Ark. Bar No. 2014171
stacy@sanfordlawfirm.com

Josh Sanford
Ark. Bar No. 2001037
josh@sanfordlawfirm.com

Page 21 of 21
Kasey Fox, et al. v. TTEC Services Corp.
U.S.D.C. (E.D. Ark.) Case No. 4:19-cv-37-KGB
Brief in Support of Plaintiffs' Motion for Conditional Certification, etc.