**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KASEY FOX, Individually and on Behalf of**
**All Others Similarly Situated,** *et al.*                                    **PLAINTIFFS**

**v.**                            **Case No. 4:19-cv-00037-KGB**

**TTEC SERVICES CORP.**                                    **DEFENDANT**

<u>**ORDER**</u>

Before the Court are two motions to compel individual arbitration filed by defendant TTEC Services Corp. (Dkt. Nos. 9, 39). For the reasons set forth herein, the Court grants both motions to compel individual arbitration.

**I.      Factual And Procedural History**

On January 17, 2019, plaintiff Kasey Fox, individually and on behalf of all others similarly situated, filed a complaint against her employer, defendant TTEC Services Corp. ("TTEC"), alleging wage-and-hour claims under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201 *et seq.* (Dkt. No. 1). A first amended complaint was filed on November 22, 2019, which added Rejia Foots, Lakesha Scott, Temisha Daniel, Mashaya Jordan, Brandi Henson, Yvette Davis, Antionette Lane, and Latrice Peterson-Davis as named plaintiffs (Dkt. No. 37). In addition, eight opt-in plaintiffs have filed consents to join this action: Kendra Russell, Marvin Newsom, Kirstie Kelly,[1] Darius Johnson, Ralanda Wanda K. Richard, Tasha Ponnell, Gina James, and Vivian Koker-Thomas (collectively with named plaintiffs, "plaintiffs") (Dkt. Nos. 18, 24, 32, 34,

---

[1]  TTEC refers to Kirstie Kelly as "Kristi" Kelly.

35, 48).  To date, although a motion to certify collective action is pending, no collective action has been certified (Dkt. No. 49).

On March 8, 2019, TTEC filed a motion to compel individual arbitration of Ms. Fox's claims, arguing that Ms. Fox electronically executed an arbitration agreement as a condition of employment (Dkt. No. 9).  Ms. Fox filed a response in opposition to the motion to compel individual arbitration on March 24, 2019 (Dkt. No. 14).  Ms. Fox also filed a notice of supplemental authority on July 17, 2019 (Dkt. No. 23), to which TTEC responded on July 30, 2019 (Dkt. No. 26).  TTEC filed its own notice of supplemental authority on July 30, 2019 (Dkt. No. 27), to which Ms. Fox responded on August 6, 2019 (Dkt. No. 30).

On December 3, 2019, TTEC filed a motion to compel individual arbitration of the claims asserted by Temisha Daniel, Rejia Foots, Gina James, Darius Johnson, Kirstie Kelly, Antionette Lane, Marvin Newsom, Latrice Peterson-Davis, Tasha Ponnell, Ralanda Wanda K. Richard, and Kendra Russell (collectively with Kasey Fox, "the Fox Plaintiffs") (Dkt. No. 39).  TTEC has not moved to compel arbitration of the claims of Lakesha Scott, Mashaya Jordan, Brandi Henson, Yvette Davis, or Vivian Koker-Thomas.  Plaintiffs filed a response in opposition to TTEC's second motion to compel individual arbitration on December 17, 2019 (Dkt. No. 43).  Because the two motions to compel individual arbitration raise essentially the same arguments, the Court will consider these motions at the same time.

In support of its motions to compel individual arbitration, TTEC submits two affidavits by James R. Hammell, Senior Manager, Instructional Design, in TTEC's Learning & Development Organization (Dkt. Nos. 10-1, 40-1).  Mr. Hammell avers as follows.  The Fox Plaintiffs are current and former employees of TTEC (Dkt. Nos. 10-1, ¶ 9; 40-1, ¶¶ 10–22).  As part of the on-boarding process at TTEC, employees receive online training and acknowledge documents and policies

through an online tool called TTEC University (Dkt. Nos. 10-1, ¶ 4; 40-1, ¶ 5).  As part of TTEC University, new employees are provided an electronic copy of TTEC's Arbitration Agreement (Dkt. Nos. 10-1, ¶ 5; 40-1, ¶ 6).  A copy of the TTEC Arbitration Agreement is attached as Exhibit A to Mr. Hammell's first declaration and Exhibit B to Mr. Hammell's second declaration (Dkt. Nos. 10-2, 40-3).

Some TTEC employees were former employees of Revana (Dkt. No. 40-1, ¶ 3).  Before December 31, 2017, Revana was a wholly-owned subsidiary of TTEC, and, after this date, Revana merged into TTEC (*Id.*).  A copy of the Revana Arbitration Agreement is attached as Exhibit A to Mr. Hammell's second declaration (Dkt. No. 40-2).  The Revana Arbitration Agreement appears to be identical to the TTEC Arbitration Agreement.

To sign electronically the Arbitration Agreement on TTEC University, an employee must (i) log into TTEC University using his or her unique password; (ii) click "Open Item" to launch the Arbitration Agreement course; (iii) once the course is open, he or she must click on the link to open the Arbitration Agreement, this opens the document in a new window; and (iv) only after the document has been opened is the employee given an opportunity to confirm his or her acceptance or rejection of the Arbitration Agreement by clicking "Accept" or "Decline" (Dkt. Nos. 10-1, ¶ 6; 40-1, ¶ 7).  The employee must open the policy document before the "Accept" button activates (Dkt. Nos. 10-1, ¶ 6; 40-1, ¶ 7).  TTEC University explains that clicking the "Accept" button is the electronic equivalent of a hand-written signature (Dkt. Nos. 10-1, ¶ 7; 40-1, ¶ 8).  Once an employee executes a document on TTEC University, the system populates a certificate as well as a training transcript record of the signed document along with the date on which the employee executed it (Dkt. Nos. 10-1, ¶ 8; 40-1, ¶ 9).

Each Arbitration Agreement states, as relevant here:

Except as provided otherwise in this Agreement, any disputes arising out of or relating to Employee's employment with [TeleTech/Revana][2] or the termination thereof, are covered by this Agreement.

Except to the extent claims are excluded from the coverage of this Agreement, the Parties agree to arbitrate all disputes arising out of or relating to their employment relationship, and Employee and [TeleTech/Revana] are each knowingly and voluntarily agreeing that arbitration of disputes under this Agreement shall be instead of litigating the disputes in a trial before a court or jury, and that they are expressly waiving their respective procedural rights to a jury and/or court trial of all disputes, except as otherwise set forth herein.

You and the Company agree to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general basis. . . .

(Dkt. Nos. 10-2, at 2; 40-2, at 2; 40-3, at 2).  Further, each Arbitration Agreement specifies:

Except as specifically excluded in this Agreement, this Agreement covers any and all disputes between [TeleTech/Revana] and Employee.  Such disputes include by way of example only and are not limited to, disputes arising out of or relating to Employee's employment with [TeleTech/Revana] and termination thereof, trade secrets, unfair competition, employment discrimination, harassment and retaliation, wrongful discharge, defamation, invasion of privacy, negligence, intentional infliction of emotional distress, wages, bonuses, commissions, benefits (however, excluding any pension and benefits plans subject to and governed by ERISA), and overtime, and leave.

(Dkt. Nos. 10-2, at 4; 40-2, at 4; 40-3, at 4).

## II.     Standard Of Review

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 *et seq.*, applies in this case.  The FAA provides, as relevant here, that "[a] written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . .  shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  The Supreme Court has described this provision as reflecting both "a liberal federal policy favoring arbitration agreements,

---

[2] TTEC was formerly known as TeleTech (Dkt. No. 40-1, ¶ 2).

notwithstanding any state substantive or procedural policies to the contrary," *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983), and "the fundamental principle that arbitration is a matter of contract," *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010).  In line with these principles, "courts must 'rigorously enforce' arbitration agreements according to their terms." *Am. Exp. Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013) (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985)).

"[T]hreshold questions of arbitrability are for a court to decide, unless there is clear and unmistakable evidence the parties intended to commit questions of arbitrability to an arbitrator." *Eckert/Wordell Architects, Inc. v. FJM Properties of Willmar, LLC*, 756 F.3d 1098, 1100 (8th Cir. 2014); *see also Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 299 (2010) ("[C]ourts should order arbitration of a dispute only where the court is satisfied that neither the formation of the parties' arbitration agreement nor (absent a valid provision specifically committing such disputes to an arbitrator) its enforceability or applicability to the dispute is in issue.").

"[T]he first task of a court asked to compel arbitration of a dispute is to determine whether the parties agreed to arbitrate that dispute." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626 (1985).  To that end, the Court's task is to determine (1) whether there is a valid arbitration agreement, and (2) whether the particular dispute falls within the terms of that agreement. *See Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004); *Arkcom Digital Corp. v. Xerox Corp.*, 289 F.3d 536, 537 (8th Cir. 2002); *Larry's United Super, Inc. v. Werries*, 253 F.3d 1083, 1085 (8th Cir. 2001).  "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995).  While "[a]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration," *Moses H.*

*Cone*, 460 U.S. 1, 24–25 (1983), the party seeking to compel arbitration carries the burden to prove a valid and enforceable agreement, *see Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019). "If the parties have a valid arbitration agreement that encompasses the dispute, a motion to compel arbitration must be granted." *Robinson v. EOR-ARK, LLC*, 841 F.3d 781, 784 (8th Cir. 2016).

Finally, because the parties rely on matters outside the pleadings, the Court will review TTEC's motions to compel individual arbitration under the standards for summary judgment. *See Neb. Mach. Co. v. Cargotec Sols.*, LLC, 762 F.3d 737, 741 (8th Cir. 2014). Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Holloway v. Pigman*, 884 F.2d 365, 366 (8th Cir. 1989).

The party seeking summary judgment always bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Farver v. McCarthy*, 931 F.3d 808, 811 (8th Cir. 2019). If the moving party carries its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material facts,' and must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Torgerson v. City of*

*Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (quoting *Matsushita*, 475 U.S. at 586, 587). The court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor. *See Anderson*, 477 U.S. at 255.

### III.   Analysis

The parties dispute whether this case involves contracts with valid arbitration provisions, but the parties agree that Arkansas law governs this case. In Arkansas, "[t]he same rules of construction and interpretation apply to arbitration agreements as apply to agreements in general." *Alltel Corp. v. Sumner*, 203 S.W.3d 77, 79 (Ark. 2005). Thus, under Arkansas law, the essential elements for an enforceable arbitration agreement are (1) competent parties, (2) subject matter, (3) legal consideration, (4) mutual agreement, and (5) mutual obligations. *See Cash in a Flash Check Advance of Ark., L.L.C. v. Spencer*, 74 S.W.3d 600, 605 (Ark. 2002). "Both parties must manifest assent to the particular terms of a contract." *Pine Hills Health & Rehab., LLC v. Matthews*, 431 S.W.3d 910, 915 (Ark. 2014); *see also Found. Telecomms., Inc. v. Moe Studio, Inc.*, 16 S.W.3d 531, 538 (Ark. 2000) (stating that, if there is no meeting of the minds as to all terms, there is no contract). "A party's manifestation of assent to a contract is judged objectively, and may be proved by circumstantial evidence." *Childs v. Adams*, 909 S.W.2d 641, 645 (Ark. 1995) (citations omitted). The Arkansas Supreme Court has explained that "a party, by knowingly accepting the benefits of a proposed contract, is bound by its terms." *DIRECTV, Inc. v. Murray*, 423 S.W.3d 555, 562 (Ark. 2012).

The Fox Plaintiffs raise only a single argument for the arbitration clause's invalidity—that is, that there was no meeting of the minds and, therefore, no mutual agreement. Specifically, the Fox Plaintiffs contend that TTEC:

> relies upon a choice that Plaintiff supposedly made between clicking "Accept" or
> "Decline" when prompted regarding the proposed arbitration agreement but fails to

present any facts from which this Court could determine that Plaintiff did in fact click "Accept." Without this proof, this Court can only speculate that Plaintiff assented to arbitration.

(Dkt. No. 14, at 3). The Court is unpersuaded.

The Arkansas Supreme Court has defined an offer as:

the [manifestation] of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it. Unless otherwise indicated by the language or the circumstances, an offer invites acceptance in any manner and by any medium reasonable in the circumstances. Acceptance of an offer is a manifestation of assent to the terms thereof made by the offeree in a manner invited or required by the offer.

*ERC Mortg. Grp., Inc. v. Luper*, 795 S.W.2d 362, 364 (Ark. 1990) (citations and internal quotation marks omitted). Under Arkansas law, "[a] contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation," and, "if a law requires a signature, an electronic signature satisfies the law." Ark. Code Ann. §§ 25-32-107(b), (d). An electronic signature is defined as "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." Ark. Code Ann. § 25-32-102(8). Federal district courts have routinely found "click-to-accept" agreements to be valid and enforceable under Arkansas law. *See*, *e.g.*, *Holley v. Bitesquad.com LLC*, 416 F. Supp. 3d 809, 821–23 (E.D. Ark. 2019); *Johnson v. Pizza Hut*, No. 1:16-CV-1089, 2017 WL 1064666, at *2 (W.D. Ark. Mar. 21, 2017); *Goza v. Multi-Purpose Civic Ctr. Facilities Bd.*, No. 12-CV-6125, 2014 WL 3672128, at *3 (W.D. Ark. July 23, 2014).

Here, the record before the Court, viewed in the light most favorable to the Fox Plaintiffs, demonstrates that each of them signed a valid and enforceable arbitration agreement. Mr. Hammell attached to his declarations a "Certificate of Completion" for each of the Fox Plaintiffs, certifying that the respective employee "[h]as successfully completed the following: INACTIVE: USA eSignature: Arbitration Agreement Non-exempt." (Dkt. Nos. 10-4, 40-4). Mr. Hammell also

Case 4:19-cv-00037-KGB   Document 53   Filed 04/10/20   Page 9 of 13

attached to his declarations training records for each of the Fox Plaintiffs, indicating that they have "completed" "INACTIVE: USA eSignature: Arbitration Agreement," and the date on which they did so (Dkt. Nos. 10-3, 40-5).

For their part, the Fox Plaintiffs insist that these arbitration certificates and training records do not demonstrate that they accepted the TTEC or Revana Arbitration Agreement, reasoning that "'completed' does not mean 'accepted,'" and that TTEC "has provided no evidence to the contrary." (Dkt. No. 43, at 2). However, Mr. Hammell avers that these documents evince acceptance of the TTEC or Revana Arbitration Agreement on the employees' part. Specifically, in his first declaration, Mr. Hammell states that "Ms. Fox's training transcript . . . indicates the Arbitration Agreement was accepted on October 29, 2018." (Dkt. No. 10-1, ¶ 10). In his second declaration, Mr. Hammell confirms that the attached arbitration certificates and training records indicate that the other Fox Plaintiffs also accepted the TTEC or Revana Arbitration Agreement (Dkt. No. 40-1, ¶¶ 10–22).

The Fox Plaintiffs' reliance on *Shockley* is misplaced. In *Shockley*, the Eighth Circuit determined that a plaintiff-employee was not bound by an arbitration provision presented in an employee handbook, reasoning that "the arbitration provision was not a validly formed contract due to a lack of acceptance." 929 F.3d at 1020. The Eighth Circuit noted that the record did not establish that the employee actually reviewed the Handbook and that, even if she had reviewed the arbitration provision, mere review of the subject materials did not constitute an acceptance on her part. *See Shockley*, 929 F.3d at 1019. Here, in contrast, TTEC has submitted record evidence that each of the Fox Plaintiffs reviewed and executed the TTEC or Revana Arbitration Agreement, thereby accepting the Arbitration Agreement as demonstrated by the written documents.

9

The better analogy is to *Blevins v. Teletech Holdings, Inc.*, No. 19-03121-CV-S-DPR, 2019 WL 3291575 (W.D. Mo. July 22, 2019), where the Western District of Missouri ordered a plaintiff-employee to arbitrate his employment-related claims based on a similarly worded click-to-accept arbitration agreement.  In *Blevins*, the employer presented a "certificate of completion," certifying that the employee had successfully completed "INACTIVE: USA eSignature: Arbitration Agreement Non-exempt" on July 3, 2012, and the declaration of a corporate representative attesting to the fact that the employee confirmed his acceptance of the arbitration agreement.  *See id.*, CM/ECF Nos. 13-3, at 2; 14-1, ¶¶ 4–5.  The *Blevins* court reasoned that "offer and acceptance are met here because TTEC provided the arbitration agreement to Blevins, and Blevins "Accept[ed]" its terms.  Furthermore, the parties' mutual promises to arbitrate, as well as Blevins' employment, constituted sufficient consideration for the agreement."  *Id.*, at *3.  Importantly, the certificate of completion and declaration submitted by the employer in *Blevins* are, in substance, nearly identical to the Certificates of Completion and corporate declarations in this case.  The Court acknowledges that, as the Fox Plaintiffs point out, the employee in *Blevins* did not argue that a valid contract did not exist because he did not accept it.  Instead, in *Blevins*, the employee claimed only that he did not recall being provided with the contract prior to the lawsuit.  *See id.*, at *1 n.1.  Still, the Court believes that *Blevins* is analogous to the instant case and provides additional support for its decision.

The Court also acknowledges that certain of the Fox Plaintiffs—specifically, Rejia Foots, Gina James, Darius Johnson, Antionette Lane, Ralanda Wanda K. Richard, Kendra Russell, and Tasha Ponnell—have each submitted a declaration in which they claim, relying upon the exact same language in each of their identical affidavits:  "I did not agree to arbitrate any claims with Defendant, I never reviewed or clicked 'Accept' on any arbitration agreement, and I never

indicated my acceptance of any arbitration agreement proposed by Defendant in any other way."
(Dkt. No. 43-1). "There is no question that 'at the summary judgment stage the judge's function
is not himself to weigh the evidence and determine the truth of the matter but to determine whether
there is a genuine issue for trial.'" *Conolly v. Clark*, 457 F.3d 872, 876 (8th Cir. 2006) (quoting
*Anderson*, 477 U.S. at 249). "However, a properly supported motion for summary judgment is not
defeated by self-serving affidavits." *Id.*; *see also Davidson & Assocs. v. Jung*, 422 F.3d 630, 638
(8th Cir. 2005) ("A plaintiff may not merely point to unsupported self-serving allegations, but
must substantiate allegations with sufficient probative evidence that would permit a finding in the
plaintiff's favor.").

The objective evidence in this case—specifically, the arbitration certificates and training
records—demonstrates that each of the Fox Plaintiffs has signed a valid and enforceable arbitration
agreement.  Mr. Hammel explains that, once an employee executes a document on TTEC
University, the system populates a certificate as well as a training transcript record of the signed
document, along with the date on which the employee executed it (Dkt. No. 40-1, ¶ 9).  He further
explains that employees are put on notice that clicking "Accept" is the electronic equivalent of a
hand-written signature; it evidences execution of the document (*Id.*, ¶ 8).  Even with all reasonable
inferences drawn in the light most favorable to the Fox Plaintiffs, the Court finds that the Fox
Plaintiffs' unsupported, self-serving affidavits do not call into question the validity or
enforceability of the TTEC or Revana Arbitration Agreements.  Accordingly, the Court determines
that the TTEC and Revana Arbitration Agreements signed by the Fox Plaintiffs are valid and
enforceable.

Having carefully reviewed the TTEC and Revana Arbitration Agreements, the Court finds
that they cover the claims asserted by the Fox Plaintiffs.  The scope of an arbitration agreement is

11

controlled by the parties' intentions, "but those intentions are generously construed as to issues of arbitrability." *Mitsubishi*, 473 U.S. at 626 (1985).  As noted above, each Arbitration Agreement specifies:

> this Agreement covers any and all disputes between [TeleTech/Revana] and Employee.  Such disputes include by way of example only and are not limited to, disputes arising out of or relating to Employee's employment with [TeleTech/Revana] and termination thereof, trade secrets, unfair competition, employment discrimination, harassment and retaliation, wrongful discharge, defamation, invasion of privacy, negligence, intentional infliction of emotional distress, wages, bonuses, commissions, benefits (however, excluding any pension and benefits plans subject to and governed by ERISA), and overtime, and leave.

(Dkt. Nos. 10-2, at 4; 40-2, at 4; 40-3, at 4).  The Fox Plaintiffs' wage-and-hour claims under the FLSA and AMWA "aris[e] out of or relat[e] to" their employment relationship with TTEC and, therefore, are covered by the TTEC and Revana Arbitration Agreements.

Finally, the Court will compel the Fox Plaintiffs' claims to individual, as opposed to collective, arbitration.  The Supreme Court recently observed that, in the FAA, "Congress has instructed federal courts to enforce arbitration agreements according to their terms—including terms providing for individualized proceedings." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1619 (2018).  Thus, "arbitration agreements containing class waivers are enforceable in claims brought under the FLSA." *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1055 (8th Cir. 2013).  The TTEC and Revana Arbitration Agreements require the Fox Plaintiffs "to bring any dispute in arbitration on an individual basis only, and not on a class, collective, or private attorney general basis."  (Dkt. Nos. 10-2, at 2; 40-2, at 2; 40-3, at 2).  This class- and collective-action waiver is enforceable.

## IV.    Conclusion

For the foregoing reasons, the Court grants TTEC's motions to compel individual arbitration (Dkt. Nos. 9, 39).  The claims asserted by Kasey Fox, Temisha Daniel, Rejia Foots, Gina James, Darius Johnson, Kirstie Kelly, Antionette Lane, Marvin Newsom, Latrice Peterson-

Davis, Tasha Ponnell, Ralanda Wanda K. Richard, and Kendra Russell are stayed pending the conclusion of the individual arbitration proceedings.  The claims asserted by Lakesha Scott, Mashaya Jordan, Brandi Henson, Yvette Davis, and Vivian Koker-Thomas are *not* stayed; those claims may proceed.

It is so ordered this 10th day of April, 2020.

Kristine G. Baker
United States District Judge