**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**KASEY FOX, Individually and on Behalf of**
**All Others Similarly Situated,** *et al.*                                                              **PLAINTIFFS**

**v.**                                        **Case No. 4:19-cv-00037-KGB**

**TTEC SERVICES CORP.**                                                              **DEFENDANT**

<u>**ORDER**</u>

Before the Court is plaintiffs' motion for conditional certification, for disclosure of contact information, and to send notices filed by plaintiffs Lakesha Scott, Mashaya Jordan, Brandi Henson, Yvette Davis, or Vivian Koker-Thomas, each individually and on behalf of all others similarly situated (collectively, "moving plaintiffs") on March 27, 2020 (Dkt. No. 49).  For the reasons set forth herein, the Court grants in part and denies in part the motion (Dkt. No. 49).

**I.      Factual And Procedural History**

On January 17, 2019, plaintiff Kasey Fox, individually and on behalf of all others similarly situated, filed a complaint against her employer, defendant TTEC Services Corp. ("TTEC"), alleging wage-and-hour claims under the Fair Labor Standards Act of 1938 ("FLSA"), as amended, 29 U.S.C. § 201 *et seq.*, and the Arkansas Minimum Wage Act ("AMWA"), Ark. Code Ann. § 11-4-201 *et seq.* (Dkt. No. 1).  A first amended complaint was filed on November 22, 2019, which added Rejia Foots, Lakesha Scott, Temisha Daniel, Mashaya Jordan, Brandi Henson, Yvette Davis, Antionette Lane, and Latrice Peterson-Davis as named plaintiffs (Dkt. No. 37).  In addition, eight opt-in plaintiffs have filed consents to join this action:  Kendra Russell, Marvin Newsom,

Kirstie Kelly,[1] Darius Johnson, Ralanda Wanda K. Richard, Tasha Ponnell, Gina James, and Vivian Koker-Thomas (collectively, "opt-in plaintiffs") (Dkt. Nos. 18, 24, 32, 34, 35, 48).

The amended complaint alleges that plaintiffs were, within the three years preceding the filing of this action, employed by TTEC as hourly-paid healthcare advocates, hourly-paid customer service representatives, and salaried supervisors at call centers in Arkansas (*Id.*, ¶ 1).  Plaintiffs claim that, in violation of the FLSA and AMWA, TTEC required that hourly-paid employees provide uncompensated ("off the clock") overtime work and that salaried supervisors have been misclassified as exempt from the overtime requirements of the FLSA (*Id.*, ¶29).

On March 27, 2020, moving plaintiffs filed a motion for conditional certification pursuant to 29 U.S.C. § 216(b), for approval and distribution of notice, and for disclosure of contact information (Dkt. No. 49).  In their motion, moving plaintiffs seek conditional certification of the following class of individuals:  "All hourly paid Healthcare Advocates employed after January 17, 2016." (*Id.*, ¶ 3).  TTEC responded in opposition to the motion (Dkt. No. 56).  Moving plaintiffs replied to TTEC's opposition (Dkt. No. 57).

On April 10, 2020, the Court granted TTEC's motions to compel arbitration of Ms. Fox, Temisha Daniel, Rejia Foots, Gina James, Darius Johnson, Kirstie Kelly, Antionette Lane, Marvin Newsom, Latrice Peterson-Davis, Tasha Ponnell, Ralanda Wanda K. Richard, and Kendra Russell (collectively with Kasey Fox, "the Fox Plaintiffs") (Dkt. No. 53).  TTEC did not move to compel arbitration of and therefore the Court did not stay the claims of moving plaintiffs Lakesha Scott, Mashaya Jordan, Brandi Henson, Yvette Davis, or Vivian Koker-Thomas.

---

[1]  TTEC refers to Kirstie Kelly as "Kristi" Kelly.

Because the claims asserted by moving plaintiffs are not stayed, the Court considers the present pending motion for conditional certification as brought before the Court by these remaining moving plaintiffs.

## II.   Legal Standard

Under the FLSA:

An action to recover the liability prescribed . . . may be maintained against any employer . . . in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated.  No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.
z

29 U.S.C. § 216(b).

District courts in the Eighth Circuit, including this one, have routinely utilized a two-step approach to determine whether certification of a collective action is appropriate.  *See, e.g.*, *McChesney v. Holtger Bros.*, No. 4:17-CV-824-KGB, 2019 WL 118408, at *2 (E.D. Ark. Jan. 7, 2019); *Cruthis v. Vision's*, No. 4:12-CV-244-KGB, 2013 WL 4028523, at *1 (E.D. Ark. Aug. 7, 2013); *Watson v. Surf-Frac Wellhead Equip. Co.*, No. 4:11-CV-843-KGB, 2012 WL 5185869, at *1 (E.D. Ark. Oct. 18, 2012).  Under this approach, a district court first determines whether the putative collective action members are similarly situated (*i.e.*, whether they were subject to a common employment policy or plan), and then, at the conclusion of discovery, the district court provides an opportunity for the defendant to move to decertify the collective action, pointing to a more developed record to support its contention that the opt-in plaintiffs are not, in fact, similarly situated to the named plaintiffs.  *See Smith v. Frac Tech Servs., Ltd.*, No. 4:09CV000679JLH, 2009 WL 4251017, at *1 (E.D. Ark. Nov. 24, 2009).

"To establish that conditional certification is appropriate, the plaintiffs must provide 'some factual basis from which the court can determine if similarly situated potential plaintiffs exist.'" *Robinson v. Tyson Foods, Inc.*, 254 F.R.D. 97, 99 (S.D. Iowa 2008) (quoting *Dietrich v. Liberty Square, L.L.C.*, 230 F.R.D. 574, 577 (N.D. Iowa 2005)).  Plaintiffs' burden at the "notice" stage is "lenient" and "requires only a modest factual showing; it does not require the plaintiff[s] and the potential class members to show that they are identically situated."  *Resendiz-Ramirez v. P & H Forestry, LLC*, 515 F. Supp. 2d 937, 941 (W.D. Ark. 2007) (citing *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689–90 (W.D. Mo. 2007)).  Still, "'more than mere allegations' are required" for plaintiffs to carry their burden.  *Tegtmeier v. PJ Iowa, L.C.*, 208 F. Supp. 3d 1012, 1019 (S.D. Iowa 2016) (quoting *Robinson*, 254 F.R.D. at 99).

"Typically, district courts will make the determination of whether to conditionally certify a class based solely on the affidavits presented by the plaintiffs."  *Huang v. Gateway Hotel Holdings*, 248 F.R.D. 225, 227 (E.D. Mo. 2008) (citing *Rappaport v. Embarq Mgmt. Co.*, No. 607CV468ORL19DAB, 2007 WL 4482581, at *4 (M.D. Fla. Dec. 18, 2007)).  Factors to be considered include:  (1) whether plaintiffs all held the same job titles; (2) whether plaintiffs worked in different geographical locations; (3) the extent to which the claimed wage-and-hour violations occurred during different time periods and by different decision makers; and (4) whether plaintiffs all alleged similar, though not identical, wage-and-hour violations.  *See McChesney*, 2019 WL 118408, at *2 (citing *Stone v. First Union Corp.*, 203 F.R.D. 532, 542 (S.D. Fla. 2001)).  "The Court does not need to determine whether class members are actually similarly situated until the 'merits stage' of the litigation, when defendants typically move to decertify the class."  *Tinsley v. Covenant Care Servs., LLC*, No. 1:14CV00026 ACL, 2015 WL 1433988, at *1 (E.D. Mo. Mar. 27, 2015) (citing *Littlefield v. Dealer Warranty Servs., LLC*, 679 F. Supp. 2d 1014, 1017 (E.D.

4

Mo. 2010)).  At this stage, the district court also does not "make any credibility determinations or findings of fact with respect to contrary evidence presented by the parties." *Israsena v. Chalak M&M AR1 LLC*, No. 4:15CV00038 JLH, 2015 WL 13648567, at *2 (E.D. Ark. Oct. 14, 2015) (quoting *Chin v. Tile Shop, LLC*, 57 F. Supp. 3d 1075, 1083 (D. Minn. 2014)).

### III.    Analysis

#### A.    The Parties' Arguments

In support of the instant motion, plaintiffs Yvette Davis and Brandi Henson submitted nearly identically worded declarations (Dkt. Nos. 49-7 and 49-8).  Plaintiffs' counsel, Mr. Josh Sanford, also submitted a declaration (Dkt. No. 49-6).  Ms. Davis states that "Defendant's primary business purpose is to offer customer contact management services to its customers . . . [and] Defendant employs various hourly-paid employees at its call centers to accomplish this goal." (Dkt. No. 49-7, ¶5).  Ms. Davis claims that she and other healthcare advocates were "required to arrive for our scheduled shifts 15 minutes early in order to boot-up our computers and log into Defendant's various computer networks and software programs . . . [but] were not clocked into Defendant's time and attendance software, and therefore not making an hourly wage."  (*Id.*, ¶10). Ms. Davis claims that "[a]dditional compensation deficiencies would arise when we experienced pre-shift technical difficulties or connectivity issues . . . [and] at the end of [moving plaintiffs'] shift[s]."  (*Id.*, ¶¶ 12, 14).  Ms. Davis claims that this "resulted in healthcare advocates such as [her] not being paid for all time worked, including overtime."  (*Id.*, ¶ 14).  Specifically, Ms. Davis states that "[d]efendant's pay policies applied to all healthcare advocates" and that she and other hourly-paid employees regularly worked in excess of 40 hours per workweek (*Id.*, ¶¶ 15-16).  Ms. Brandi Henson's affidavit makes identical claims (Dkt. No. 49-7).

Plaintiffs also request that the Court ratify their proposed notices and notice process as it pertains to potential opt-in plaintiffs:  plaintiffs would send notice to potential opt-in plaintiffs *via* the United States Postal Service and e-mail, or alternatively *via* United States Mail and text message (Dkt. Nos. 49-1; 49-3), along with a consent to join collective action (Dkt. Nos. 49-2; 49-4), and the Court would set a 90-day opt-in period.  Plaintiffs would also distribute a reminder postcard *via* United States Mail, and plaintiffs would send a follow-up notice by email or alternatively text message (Dkt. Nos. 49, ¶ 9; 49-5).  Plaintiffs would also require TTEC to post the notice in a conspicuous location at its call centers in the same area in which it posts government-required notices (Dkt. No. 49, ¶ 10).  Finally, plaintiffs ask that the Court direct TTEC to provide plaintiffs' counsel with a list, in electronic importable format, of the names, last known mailing addresses, cell phone numbers, and e-mail addresses of the potential opt-in plaintiffs no later than one (1) week after the date of the entry of the Order granting this motion (*Id.*, ¶ 8).

TTEC opposes conditional certification, arguing:  (1) that "most of the plaintiffs are subject to individual arbitration and affirmatively waived their right to participate in a class or collective action" and (2) that plaintiffs have failed to identify "a common policy or plan that allegedly led to any off-the-clock work" and therefore failed to establish that the proposed class is similarly situated (Dkt. No. 56, at 1).  TTEC also opposes plaintiffs' proposed method and form of class notification for a variety of reasons, arguing it:  "(i) [f]ails to fully and accurately describe TTEC's respective position as to the defenses asserted in this action; (ii) insufficiently defines the class and class period; (iii) unjustifiably requests posting; (iv) unjustifiably requests texts and email notice; and (v) unjustifiably requests a reminder be sent during the notice period."  (*Id.*, at 12).

**B.    FLSA Conditional Certification**

**1.    Proposed Class Is Similarly Situated**

Having carefully reviewed the motion and related filings, the applicable legal authorities, and the entire record in this matter, the Court finds that, for the purposes of conditional certification only, the declarations submitted by Ms. Davis and Ms. Henson sufficiently allege that all members of the proposed class were subject to a common policy or plan, that is, failing to pay hourly-paid healthcare advocates for all time spent working while not logged into TTEC's computer software, including overtime.  Setting aside the issue of the applicability of TTEC's arbitration agreement, which the Court discusses below, the Court finds that plaintiffs have carried their lenient burden of establishing that they are similarly situated to other hourly-paid healthcare advocates in TTEC's Arkansas call centers who were not paid for all time worked, including overtime.

TTEC's argument that plaintiffs have not sufficiently identified a single decision, policy, or plan is unpersuasive, especially at this lenient state of conditional certification.  Plaintiffs do not point to a written policy requiring them to work without compensation or "off the clock."  Further, Ms. Davis and Ms. Henson's declarations do not explicitly allege that they were directed or asked by management to work off the clock.  However, Ms. Davis and Ms. Henson's declarations sufficiently claim, based on their personal knowledge, that they, and other hourly-paid healthcare advocates employed by TTEC whom they observed, were required to work off the clock at the beginnings and ends of their shifts and at other times, including overtime, and that TTEC's pay policies applied to all healthcare advocates (Dkt. Nos. 49-7, ¶¶ 15-16; 49-8, ¶¶ 15-16).  Moving plaintiffs have met their lenient burden at the notice stage of conditional certification by "establish[ing] a colorable basis for their claim that the putative class members were the victims of a single decision, policy, or plan." *Carden v. Scholastic Book Clubs, Inc.*, No. 2:10-CV-01112-NKL, 2011 WL 2680769, at *2 (W.D. Mo. July 8, 2011) (quoting *Simmons v. Valspar Corp.*, No. CIV. 10-3026 RHK/SER, 2011 WL 1363988, at *3 (D. Minn. Apr. 11, 2011)).

The Court recognizes, as TTEC points out, that Ms. Davis and Ms. Henson's personal knowledge is limited to their experience in TTEC's two Arkansas call centers, in Sherwood, Arkansas, and Morrilton, Arkansas.  There is no factual information in the record before the Court that disputes this.  Therefore, the Court limits notice to those hourly-paid healthcare advocates employed in TTEC's Arkansas call centers.

Accordingly, the Court conditionally certifies this action as a collective action pursuant to § 216(b) of the FLSA for the purpose of facilitating notice to healthcare advocates employed at TTEC's Arkansas call centers.

### 2. Inclusion Of Potential Class Members Who Have Signed Arbitration Agreements

TTEC asks the Court to exclude from the scope of moving plaintiffs' current motion any individuals who agreed to arbitrate their claims on an individual basis.  TTEC's employee Arbitration Agreement (the "Agreement") provides that the parties will arbitrate on an individual basis "any disputes arising out of or relating to" their employment with TTEC (Dkt. Nos. 10-2, at 2).  This Court has previously upheld the validity of the arbitration agreements at issue in this case and compelled 12 plaintiffs to individual arbitration (Dkt. No. 53).  TTEC argues that, based on the plain language of the Agreement, any signatory cannot participate in this lawsuit and therefore should not be noticed.  TTEC has stated that, "[t]o the extent the Court certifies any class, and at the Court's request, TTEC can provide the Court with evidence showing which current and former employees agreed to TTEC's arbitration program."  (Dkt. No. 56, at 5 n.1).

Moving plaintiffs argue that the Court should not believe TTEC's claims that it knows which putative opt-ins are subject to the Agreement and that any such argument is an affirmative defense to be raised with regard to individual employees at a later date.  Moving plaintiffs ask the Court to decline to resolve prospectively matters on behalf of employees who are not yet before

the Court and to allow notice to all TTEC healthcare advocates, whether or not arbitration agreements were signed.

It is a question of first impression for this Court whether a court may authorize notice to individuals who entered individual arbitration agreements, waiving their right to join the present action.  Based on the Court's research, the Eighth Circuit Court of Appeals has not spoken on the issue.  However, the Fifth Circuit has considered the issue and concluded that notifying employees bound by arbitration agreements, "those who cannot ultimately participate in the collective[,]" 'merely stirs up litigation,'" which is proscribed by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989).  *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502 (5th Cir. 2019) (quoting *Hoffman-La Roche*, 493 U.S. at 174).  Applying the same logic, the Seventh Circuit has also held that "a court may not authorize notice to individuals whom the court has been shown entered mutual arbitration agreements waiving their right to join the action.  And the court must give the defendant an opportunity to make that showing."  *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020).  The Seventh Circuit also recognized the court's "obligation to maintain neutrality and to shield against abuse of the collective-action device."  *Bigger*, 947 F. 3d at 1050.

Under the framework set out by the Fifth and Seventh Circuits, an "employer seeking to exclude employees from receiving notice has the burden to show, by a preponderance of the evidence, the existence of a valid arbitration agreement for each employee it seeks to exclude from receiving notice."  *Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1050 (7th Cir. 2020); *In re JPMorgan Chase & Co.*, 916 F.3d 494, 502–03 (5th Cir. 2019).  The Court does not "simply take an employer at its word when it says certain employees entered valid arbitration agreements."  *Bigger*, 947 F.3d at 1051.  "[I]f the employer does not prove that an employee entered a valid arbitration agreement, then the court may authorize notice to that employee."  *Id.* at 1050.  At least one court in the Eighth

Circuit has applied this framework as set out by the Fifth and Seventh Circuits.  *See Haworth v. New Prime, Inc.*, 448 F. Supp. 3d 1060, 1074 (W.D. Mo. 2020) (applying the above framework to conclude that employer had failed to meet its burden of showing that a valid arbitration agreement existed and therefore approving notice).  At least one court in this district has separately reached the same conclusion.  *Israsena v. Chalak M&M AR1 LLC*, No. 4:15CV00038 JLH, 2015 WL 13648567, at *4 (E.D. Ark. Oct. 14, 2015) ("Because the Court has already ruled that the arbitration agreement is enforceable, inviting former servers who signed such an agreement to opt in would serve no purpose.").

In the present case, this Court has already held TTEC's Arbitration Agreement valid and enforceable (Dkt. No. 53).  While the Court will not merely take TTEC at its word that certain employees entered valid agreements, it will allow TTEC an opportunity to prove that an employee entered into a valid arbitration agreement.  Where TTEC is able to prove the existence of an arbitration agreement in the form this Court has held to be valid and enforceable, the Court orders those employees excluded from notice of this action.

### C.    Notice

Moving plaintiffs request that the Court ratify the following notice process as it pertains to other potential opt-in plaintiffs:  moving plaintiffs would send notice to other potential opt-in plaintiffs *via* the United States Postal Service and e-mail, or alternatively *via* United States Mail and text message (Dkt. Nos. 49-1; 49-3), along with a consent to join collective action (Dkt. Nos. 49-2; 49-4), and the Court would set a 90-day opt-in period.  Moving plaintiffs would also distribute a reminder postcard *via* United States Mail and a follow-up notice by email, or alternatively text message (Dkt. Nos. 49, ¶ 9; 49-5).  Moving plaintiffs would also require TTEC to post the notice in a conspicuous location at its call centers in the same area in which it posts

government-required notices (Dkt. No. 49, ¶ 10).  Finally, moving plaintiffs ask that the Court direct TTEC to provide plaintiffs' counsel with a list, in electronic importable format, of the names, last known mailing addresses, cell phone numbers, and e-mail addresses of all potential opt-in plaintiffs no later than one (1) week after the date of the entry of the Order granting this motion (*Id.*, ¶ 8).

TTEC requests that, if the Court certifies a collective action, the Court permit the parties to negotiate further on the form of the notice.  TTEC also argues that moving plaintiffs' proposed method and form of class notification:  "(i) [f]ails to fully and accurately describe TTEC's respective position as to the defenses asserted in this action; (ii) insufficiently defines the class and class period; (iii) unjustifiably requests posting; (iv) unjustifiably requests texts and email notice; and (v) unjustifiably requests a reminder be sent during the notice period."  (Dkt. No. 56, at 12).

The Court declines to direct the parties to negotiate further.  With regard to TTEC's objection to moving plaintiffs' request to send notice *via* email, or alternatively text message, "[t]he Court finds little basis for imposing a presumption that notice by mail should be the only approved method of providing notice."  *Simmons v. Enter. Holdings, Inc.*, No. 4:10-cv-625, 2011 WL 1304732, at *1 (E.D. Mo. Apr. 6, 2011); *see also Turner v. Concentrix Servs., Inc.*, No. 1:18-CV-1072, 2020 WL 544705, at *8 (W.D. Ark. Feb. 3, 2020).  Notice *via* email has become common in the Eighth Circuit.  *See, e.g., McChesney v. Holtger Bros.*, No. 4:17-CV-00824-KGB, 2019 WL 118408, at *6 (E.D. Ark. Jan. 7, 2019); *Turner v. Concentrix Servs., Inc.*, No. 1:18-CV-1072, 2020 WL 544705, at *8 (W.D. Ark. Feb. 3, 2020*); Hampton v. Maxwell Trailers & Pick-Up Accessories, Inc.*, No. 2:18CV110 HEA, 2020 WL 1888798, at *5 (E.D. Mo. Apr. 16, 2020); *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 583 (D. Minn. 2014); *Midgett v. Werner Enterprises, Inc.*, No. 8:18CV238, 2020 WL 6163019, at *6 (D. Neb. Oct. 13, 2020); *Pinard v.*

*Nurse Force, Inc.*, No. 417CV00434JAJRAW, 2018 WL 6362647, at *5 (S.D. Iowa Sept. 28, 2018).  Notice *via* email furthers the goal of "ensur[ing] that potential plaintiffs receive notice in a timely and efficient manner."  *Hussein v. Capital Bldg. Servs. Grp.*, 152 F. Supp. 3d 1182, 1198 (D. Minn. 2015).  Therefore the Court grants moving plaintiffs' request that notice may be sent *via* U.S. Mail and email.

The Court denies moving plaintiffs' request that TTEC be required to post the collective action notice at TTEC's offices.  TTEC need not post the notice because current employees presumably have signed the arbitration agreement and, if they have not, defendant is separately required to produce their contact information for notice by mail and email and has also stated that it will work with plaintiffs to agree on a process to search for any class members with an invalid address.  *See Israsena v. Chalak M&M AR1 LLC*, No. 4:15CV00038 JLH, 2015 WL 13648567, at *5 (E.D. Ark. Oct. 14, 2015) (denying request for notice by posting when mailing notice will minimize redundancy and be more effective at reaching potential class members); *see also Bonds v. Langston Companies, Inc.*, No. 3:18-CV-00189 KGB, 2019 WL 4673569, at *4 (E.D. Ark. Sept. 24, 2019).

Defendants' argument that the applicable statute of limitations for the notice is two years, rather than three as argued by plaintiffs, is a merits-based argument and inappropriate at this time. "Whether Defendants' violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants."  *Israsena v. Chalak M&M AR1 LLC*, No. 4:15CV00038 JLH, 2015 WL 13648567, at *5 (E.D. Ark. Oct. 14, 2015) (quoting *Resendiz-Ramirez v. P & H Forestry*, LLC, 515 F. Supp. 2d 937, 942 (W.D. Ark. 2007)).

Accordingly, plaintiffs may send one written notice and consent form to the potential opt-in plaintiffs, as well as one follow-up written notice, all *via* U.S. Mail.  Plaintiffs' proposed written

notice, consent, and follow-up forms are acceptable (Dkt. Nos. 49-1; 49-2; 49-5).  Furthermore, the Court grants plaintiffs' motion to the extent they seek permission to send potential opt-in plaintiffs one email with notice of the action and another from www.Rightsignature.com with an electronic consent form.  The proposed emails are acceptable to the Court (Dkt. No. 49-3; 49-4). The Court denies without prejudice plaintiffs' request to send notice, consent, and follow-up information to the potential opt-in plaintiffs *via* text message.

To facilitate notice, defendants are ordered to provide plaintiffs' counsel with a list, in electronic importable format, of the names, last known mailing addresses, and e-mail addresses of the potential opt-in plaintiffs no later than 21 days after the date of the entry of this Order.  Also within 21 days from the entry of this Order, TTEC may identify to plaintiffs' counsel and the Court through a written filing those employees who have entered into individual arbitration agreements and should produce any supporting evidence showing the existence and validity of those agreements.  Plaintiffs will have 14 days to challenge any of TTEC's designations.  Those employees proven to be bound by TTEC's arbitration agreement shall be excluded from all forms of notice.  Plaintiffs shall have 90 days from the date on which defendants provide this information to distribute notice to the potential opt-in plaintiffs and to file copies of the consent forms with the Court.  Plaintiffs may provide notice to the class of individuals consistent with this Order.

IV.    **Conclusion**

For the reasons set for above, the Court grants in part and denies in part moving plaintiffs' motion for conditional certification, for disclosure of contact information, and to send notices (Dkt. No. 49).  The Court conditionally certifies the following class:  "All hourly paid Healthcare Advocates employed after January 17, 2016 at TTEC's Arkansas offices."  The Court excludes

13

from the class those former or current employees shown to be bound by individual arbitration agreements the Court has determined to be valid and enforceable.

To facilitate notice, defendants are ordered to provide plaintiffs' counsel with a list, in electronic importable format, of the names, last known mailing addresses, and e-mail addresses of the potential opt-in plaintiffs no later than 21 days after the date of the entry of this Order.  Also within 21 days from the entry of this Order, TTEC may identify to plaintiffs' counsel and the Court through a written filing those employees who have entered into individual arbitration agreements and should produce any supporting evidence showing the existence and validity of those agreements.  Plaintiffs will have 14 days to challenge any of TTEC's designations.  Those employees proven to be bound by TTEC's arbitration agreement shall be excluded from all forms of notice.  Plaintiffs shall have 90 days from the date on which defendants provide this information to distribute notice to the potential opt-in plaintiffs and to file copies of the consent forms with the Court.  Plaintiffs may provide notice to the class of individuals consistent with this Order.

It is so ordered this 22nd day of March, 2021.

Kristine G. Baker
United States District Judge